IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCOTT SNIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFF, <br><br> v. <br><br> QUANTUM HEALTH, INC. <br><br> DEFENDANT. | CIVIL ACTION NO. _____ <br><br> CLASS AND COLLECTIVE ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Scott Snider ("Plaintiff"), on behalf of himself and all similarly situated individuals, brings this Class and Collective Action Complaint ("Complaint") against Quantum Health, Inc. ("Defendant"), and in support states the following:

### BACKGROUND

1. Defendant administers healthcare coverage for more than a million members across the country.

2. Defendant holds an accreditation in Health Utilization Management from the Utilization Review Accreditation Commission.[1]

3. In administering healthcare coverage for members, Defendant reviews requests for services and makes coverage determinations based on medical necessity.

4. Defendant employed Plaintiff and other non-management employees whose primary job was to perform utilization reviews ("Utilization Review Employees").

---

[1] https://accreditnetadmin.urac.org/UracPortal/Directory/CompanyView/3985/853 (last visited April 12, 2020).

1

5. Defendant used numerous job titles to refer to its Utilization Review Employees, including Utilization Review Nurse, BH Utilization Review Specialist, Pre-Certification Nurse, Utilization Management Nurse, and other similar titles.

6. Defendant paid Utilization Review Employees a salary.

7. Defendant's Utilization Review Employees regularly worked over 40 hours per week.

8. Defendant classified Utilization Review Employees as exempt from state and federal overtime laws and did not pay them overtime for all hours worked over 40 in an individual workweek.

9. The utilization reviews performed by Plaintiff and other Utilization Review Employees consisted of reviewing health insurance benefit requests submitted on behalf of members against predetermined guidelines and criteria for insurance coverage and payment purposes ("Utilization Review Work").

10. The Utilization Review Work performed by Utilization Review Employees is referred to as "Initial Clinical Review" by the organization that accredits Defendant in Health Utilization Management, URAC.[2]

11. URAC's accreditation guidelines provide that Defendant's Utilization Review Employees may "approve requests for admissions, procedures, [or] services that meet … criteria, but must refer requests that do not meet… criteria to peer clinical review for" approval or denial.[3]

---

[2] See www.castleworldwide.com/idev/guidelines/ccnresources/URAC_Health_Plan_Guide_v7_3.pdf (hereinafter, "URAC Accreditation Guidelines"), p. 32 (URAC Accreditation Guidelines, defining "Initial Clinical Review" as the following: Initial Clinical Review: Clinical review conducted by appropriate licensed or certified health professionals. Initial clinical review staff may approve requests for admissions, procedures, and services that meet clinical review criteria, but must refer requests that do not meet clinical review criteria to peer clinical review for certification or non-certification. Sometimes referred to as "first level review.") (last visited April 12, 2020).
[3] *Id.*

12. URAC's accreditation guidelines also explicitly provide that an "LPN/LVN meets the URAC definition of health professional and this licensure category may conduct initial clinical review."[4]

13. In fact, in the last two years, Defendant employed one or more Utilization Review Employees to perform Utilization Review Work who possessed (1) only LPN-level credentials; and (2) no other clinical certification, such as Registered Nurse licensure.

14. The Utilization Review Work performed by Plaintiff and other Utilization Review Employees was non-exempt work.

15. Plaintiff brings this action individually and on behalf of other similarly situated Utilization Review Employees, who, due to Defendant's misclassification scheme, were not paid all earned overtime pay for time they worked in excess of forty (40) hours in individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

16. Plaintiff also brings class action claims under Ohio state law under the Ohio Minimum Fair Wage Standards Act ("the Ohio Wage Act"), Ohio Rev. Code Ann. § 4111.01, 4111.03 and 4111.10 and the Ohio Prompt Pay act ("the OPPA"), Ohio Rev. Code Ann. § 4113.15.

17. Plaintiff brings his state law claims pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4) for Defendant's failure to pay her and other Utilization Review Employees for all earned overtime pay.

**THE PARTIES**

18. Plaintiff worked for Defendant as a Utilization Review Employee from January 2017 to January 2019 in this District.

---

[4] *See* URAC Guidelines, p. 344 (providing that an "LPN/LVN meets the URAC definition of health professional and this licensure category may conduct initial clinical review.") (last visited April 12, 2020).

19. Defendant is a Delaware foreign corporation licensed to do business in Ohio, whose principal place of business is located in Columbus, Ohio (Franklin County) within this Judicial District and can be served through its statutory agent, Business Filings Incorporated, 4400 Easton Commons Way, Columbus OH 43219.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' FLSA claims arise under federal law. *See* U.S.C. § 216(b).

21. Venue is proper in this District under 28 U.S.C. § 1391 because the events forming the basis of this suit occurred in this District and substantial activities took place in Harrisburg, Pennsylvania related to Plaintiff's claim.

**FACTUAL ALLEGATIONS**

22. Plaintiff worked as a Utilization Review Employee for Defendant.

23. During his employment with Defendant, Plaintiff's job duties were routine and rote and did not include the exercise of discretion and judgment with respect to matters of significance.

24. In fact, in performing his Utilization Review Work for Defendant, Plaintiff had authority to **approve** health insurance benefit requests that matched predetermined criteria, but did not have the authority to **deny** health insurance benefit requests that did not match the predetermined criteria for approval.[5]

25. During his employment with Defendant, Plaintiff's job duties did not include engaging in bedside nursing or providing medical advice to patients or other individuals with health issues.

---

[5] *See* www.castleworldwide.com/idev/guidelines/ccnresources/URAC_Health_Plan_Guide_v7_3.pdf (URAC accreditation guidelines defining "Initial Clinical Review" as "Clinical review conducted by appropriate licensed or certified health professionals. Initial clinical review staff may approve requests for admissions, procedures, and services that meet clinical review criteria, but must refer requests that do not meet clinical review criteria to peer clinical review for certification or non-certification. Sometimes referred to as "first level review.").

26. During his employment with Defendant, Plaintiff's job duties did not involve providing traditional nursing care in a clinical setting or providing direct medical care to patients or other individuals with health issues.

27. During his employment with Defendant, Plaintiff's job duties did not include administering patients' treatments, operating or monitoring medical equipment, helping perform diagnostic tests or analyzing the results from diagnostic tests, diagnosing human responses to actual or potential health problems, or providing medical opinions on treatment and medication, or determining whether an issue should be referred for an independent medical evaluation.

28. During his employment with Defendant, Defendant required Plaintiff to perform his job duties in accordance with its corporate policies, procedures, guidelines, and guidelines embedded in Defendant's computer software.

29. During his employment with Defendant, Plaintiff's job duties did not involve creating or drafting the corporate policies, procedures, and guidelines pertaining to Utilization Review Work.

30. In fact, during his employment with Defendant, Plaintiffs job duties did not involve creating or drafting any corporate policies, procedures or guidelines for Defendant or Defendant's employees.

31. Defendant suffered Plaintiff to work over 40 hours in one or more individual workweeks during the last three years.

32. During his employment with Defendant, Plaintiff worked over 40 hours in one or more individual workweeks during the last three (3) years.

33. Defendant classified Plaintiff as exempt from the overtime provisions of the FLSA.

34. Defendant classified Plaintiff as exempt from the overtime provisions of the Ohio Wage Act.

35. Defendant paid Plaintiff a salary.

36. When Plaintiff worked over 40 hours in individual workweeks, Defendant did not pay Plaintiff overtime at one-and-one-half times his regular rate of pay.

37. Defendant is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

38. Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

39. Defendant has made more than $500,000 in sales made or business done in each of the last three calendar years.

40. During his employment, Plaintiff was an "employee" of Defendant as defined by the FLSA in 29 U.S.C. § 203(e).

41. During his employment, Defendant was Plaintiff's "employer" as defined under the FLSA in § 203(d).

42. During his employment, Plaintiff was an "employee" of Defendant as defined by the Ohio Wage Act and the OPPA. § 4111.03(D)(3) and §4113.15(A).

43. During his employment, Defendant was Plaintiff's "employer" as defined under the Ohio Wage Act and the OPPA. § 4111.03(D)(2) and §4113.15(D)(4).

44. Defendant has refused to pay Plaintiff overtime wages at one-and-one-half times his regular rate for all hours worked in excess of forty (40) in a workweek and those unpaid wages have remained unpaid for more than thirty (30) days of performing the work.

**COLLECTIVE ACTION ALLEGATIONS**

45. Plaintiff brings his FLSA claims as a collective action pursuant to 29 USC § 216(b).

46. Plaintiff's consent form to participate in this collective action as a Party Plaintiff is attached to this Complaint as Exhibit A.

6

47. The collective action is defined as follows:

All individuals employed by Defendant as Utilization Review Employees in the last three years who were paid a salary and classified as exempt ("FLSA Collective Action Members").

48. Plaintiff is similarly situated to the potential FLSA Collective Action Members because they were paid the same and performed the same primary job duties.

49. On information and belief, in the last three years, Defendant has employed at least 100 individuals who performed the same primary duties as Plaintiff.

50. During their employment, Defendant was FLSA Collective Action Members' "employer" as defined by the FLSA, § 203(d).

51. Of Defendant's employees who performed the same primary job duties as Plaintiff in the last three years, Defendant classified some or all as exempt from the overtime provisions of the FLSA and paid them a salary.

52. Of Defendant's employees classified as exempt and who performed the same primary duties as Plaintiff in the last three years, some or all worked over 40 hours in one or more individual workweeks.

53. Defendant maintained one or more common job descriptions for Utilization Review Employees.

54. Defendant has names and addresses for potential FLSA Collective Action Members in its payroll or personnel records.

55. Defendant has email addresses for potential FLSA Collective Action Members in its payroll or personnel records.

56. Defendant has phone numbers for potential FLSA Collective Action Members in its payroll or personnel records.

57. Defendant were aware or should have been aware that the FLSA required it to pay potential Collective Action Members overtime if they primarily performed non-exempt work.

**CLASS ACTION ALLEGATIONS**

58. Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following state law sub-class:

> All individuals employed by Defendant as Utilization Review Employees in Ohio who were paid on a salary basis and classified as exempt (the "Ohio Rule 23 Class").

59. The Ohio Rule 23 Class has more than 40 members.

60. As a result, the Ohio Rule 23 Class is so numerous that joinder of all members is not practical.

61. There are questions of law or fact common to the Ohio Rule 23 Class, including (1) whether the Class primarily performed non-exempt work; (2) whether Defendant violated the Ohio Wage Act by refusing to pay the Ohio Rule 23 Class overtime pay; (3) the proper measure of damages if Defendant misclassified the Ohio Rule 23 Class as exempt from the overtime provisions of the Ohio Wage Act,(4) whether Defendant violated the OPPA by refusing to pay overtime wages within thirty (30) days of performing the work, and (5) the proper measure of damages if Defendant refused to pay the Ohio Rule 23 Class their wages within thirty (30) days of performing the work.

62. Plaintiff's overtime claims are typical of those of the Ohio Rule 23 Class because they arise out of Defendant's uniform compensation practices.

63. Defendant's defenses to Plaintiff's Ohio Wage Actclaims are typical of their defenses to those of the Ohio Rule 23 Class because they are grounded in the same compensation practices.

64. Plaintiff can fairly and adequately protect the interests of the Ohio Rule 23 Class because he is asserting the same claims as the Ohio Rule 23 Class.

65. Plaintiff can fairly and adequately protect the interests of the Ohio Rule 23 Class because she has no interests adverse to the Class.

66. Plaintiff can fairly and adequately protect the interests of the Ohio Rule 23 Class because she has retained counsel experienced in class action employment litigation.

67. The common questions of law and fact predominate over the variations which may exist between members of the Ohio Rule 23 Class, if any.

68. Plaintiff and the members of the Ohio Rule 23 Class on the one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages, interest, penalties, attorneys' fees and costs.

69. If individual actions were required to be brought by each member of the Ohio Rule 23 Class injured or affected, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals and to this Court, as well as to the Defendant.

70. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Ohio Rule 23 Class is entitled.

71. The books and records of Defendant are material to the Ohio Rule 23 Class's claims because they disclose the hours worked by each member of the Ohio Rule 23 Class and the rate of pay for that work.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (FLSA COLLECTIVE ACTION)

72. Plaintiff incorporates here the previous allegations of this Complaint.

9

73. This count arises from Defendant's violations of the FLSA by failing to pay overtime to Plaintiff and the FLSA Collective Action Members at one and one-half times their regular rates when they worked over 40 hours in individual workweeks.

74. Plaintiff was not exempt from the overtime provisions of the FLSA.

75. FLSA Collective Action Members were not exempt from the overtime provisions of the FLSA.

76. Plaintiff was directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks.

77. Other similarly situated FLSA Collective Action Members were directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks.

78. Defendant paid Plaintiff a salary and no overtime compensation.

79. Defendant paid other similarly situated FLSA Collective Action Members a salary and no overtime compensation.

80. Defendant violated the FLSA by failing to pay overtime to Plaintiff at one and one-half times his regular rate of pay when he worked over 40 hours in one or more individual workweeks.

81. Defendant violated the FLSA by failing to pay overtime to other similarly situated FLSA Collective Action Members at one and one-half times their regular rates of pay when they worked over 40 hours in one or more individual workweeks.

82. Defendant's failure to pay Plaintiff and other similarly situated FLSA Collective Action Members one and one-half times their regular rate for all time worked over 40 hours in a workweek was willful.

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Action Members, seek a judgment against Defendant as follows:

A. An Order designating this lawsuit as a Collective Action under the FLSA and permitting the issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

B. All unpaid overtime wages due to Plaintiff and the FLSA Collective Action Members;

C. Pre-judgment and post-judgment interest;

D. Liquidated damages equal to the unpaid overtime compensation due;

E. Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit; and

F. Such other relief as the Court deems appropriate.

## COUNT II
### OHIO WAGE ACT – FAILURE TO PAY OVERTIME
### AND
### OPPA – FAILURE TO PAY WAGES TIMELY
### (OHIO RULE 23 CLASS ACTION)

83. Plaintiff incorporates here the previous allegations of this Complaint.

84. This count arises from Defendant's violations of the Ohio Wage Act by failing to pay overtime to Plaintiff and the Class when they worked over 40 hours in individual workweeks.

85. Defendant classified Plaintiff as exempt from the overtime provisions of the Ohio Wage Act.

86. Defendant classified the Class as exempt from the overtime provisions of the Ohio Wage Act.

87. Plaintiff was not exempt from the overtime provisions of the Ohio Wage Act.

88. The class was not exempt from the overtime provisions of the Ohio Wage Act.

89. Defendant suffered Plaintiff to work over 40 hours in individual workweeks.

11

90. Defendant violated the Ohio Wage Act by failing to pay Plaintiff and the Class overtime at one-and-one-half times their regular rates of pay when they worked over 40 hours in individual workweeks.

91. The OPPA requires that Defendant pay Plaintiff and the Ohio Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month. See O.R.C. § 4113.

92. Defendant was a covered employer pursuant to the OPPA.

93. This count arises from Defendant's violations of the OPPA by failing to pay Plaintiff and the Ohio Rule 23 Class all wages, including overtime wages at one and one-half times their regular rate within thirty (30) days of performing the work. See O.R.C. §4113.15(B)

94. Plaintiff's and the Ohio Rule 23 Class' unpaid overtime wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

95. Defendant's failure to pay Plaintiff and other similarly situated Ohio Rule 23 Class one and one-half times their regular rate for all time worked over 40 hours in a workweek and more than thirty (30) days beyond their regularly scheduled payday was willful

WHEREFORE, Plaintiff, on behalf of himself and the Collective Action Members, seek a judgment against Defendant as follows:

A. All unpaid overtime wages owed to Plaintiff and the Class;

B. Prejudgment and post-judgment interest;

C. Liquidated damages equal to the unpaid overtime compensation due;

D. Liquidated damages for the Plaintiff and each of the Ohio Rule 23 Class Members pursuant to the OPPA equal to six percent (6%) of the unpaid wages or $200, whichever is the greater;

E. Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit; and

F. Such other relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Dated: May 6, 2020                                    Respectfully Submitted,

**BARKAN MEIZLISH DEROSE
WENTZ MCINERNEY PEIFER, LLP**

**By:** /s/*Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Jessica R. Doogan (OH Bar No. 0092105)
250 East Broad Street, 10th Floor
Columbus, OH 43215
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
jdoogan@barkanmeizlish.com

| **SIEGEL LAW GROUP, PLLC** | **THE HEDGPETH LAW FIRM, PC** |
|---|---|
| */s/ Jack Siegel*<br>Jack L. Siegel*<br>Texas Bar No. 24070621<br>4925 Greenville, Suite 600<br>Dallas, Texas 75206<br>Telephone: (214) 790-4454<br>jack@siegellawgroup.biz | By: *Travis M. Hedgpeth*<br>Travis M. Hedgpeth*<br>Texas Bar No. 24074386<br>3050 Post Oak Blvd., Suite 510<br>Houston, Texas 77056<br>Telephone: (281) 572-0727<br>travis@hedgpethlaw.com |

*Application for admission pro hac vice forthcoming

**ATTORNEYS FOR PLAINTIFFS AND OTHERS SIMILARLY SITUATED**